UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHY A. LAMBERT-BROWN,<br><br>                  Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                  Defendant. | Case No. C12-661-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE** |

Kathy A. Lambert-Brown seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends that the ALJ erred by (1) rejecting certain medical opinions; (2) omitting some limitations from the assessment of Ms. Lambert-Brown's residual functional capacity ("RFC"); (3) rejecting Ms. Lambert-Brown's testimony and lay witness testimony; and (4) not fully complying with the Appeals Council's remand order at step four. Dkt. 27. As discussed below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED** with prejudice.

### I.    FACTUAL AND PROCEDURAL HISTORY

Kathy Lambert-Brown is currently 54 years old, has a college degree, and has worked as a service representative, compliance specialist, telemarketer, account executive, sales

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 1

representative, and assistant underwriter for the insurance industry.[1] On July 13, 2006, she applied for benefits, alleging disability as of May 16, 2005. Tr. 202-10. Her applications were denied initially and on reconsideration. Tr. 98-101, 103-07. The ALJ conducted a hearing on January 1, 2009, finding Ms. Lambert-Brown not disabled. Tr. 82-94. Ms. Lambert-Brown timely appealed and the Appeals Council remanded for further proceedings. A supplemental hearing was held on December 18, 2009, and the ALJ again found Ms. Lambert-Brown not disabled. Tr. 14-35. As the Appeals Council denied Ms. Lambert-Brown's second request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:** Ms. Lambert-Brown had not engaged in substantial gainful activity since May 6, 2005.

**Step two:** Ms. Lambert-Brown had the following severe impairments: affective disorder and anxiety disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Lambert-Brown had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple and some detailed tasks and instructions. She should have no significant direct contact with the general public.

**Step four:** Ms. Lambert-Brown could perform her past work, and is therefore not disabled.

**Step five:** In the alternative, as there exists multiple jobs that exist in significant numbers in the national economy that Ms. Lambert-Brown can perform, she is not disabled.

Tr. 14-29.

---

[1] Tr. 39, 202, 294.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 2

### III. DISCUSSION

**A.  The ALJ Did Not Err In Evaluating the Medical Evidence.**

Ms. Lambert-Brown contends that the ALJ improperly rejected multiple providers' opinions and instead erroneously relied on the opinions of the non-examining State agency psychologist and the medical expert who testified at the administrative hearing.

*1.  Dr. Rosengren*

David Rosengren, Ph.D., performed a psychological evaluation of Ms. Lambert-Brown in November 2006.  He assigned Ms. Lambert-Brown a Global Assessment of Functioning ("GAF") score of 50 (indicating "serious symptoms"), and diagnosed her with generalized anxiety disorder and rule-out post-traumatic stress disorder (PTSD), and made a provisional diagnosis of bipolar disorder.  Tr. 499.  He did not perform any cognitive testing, as he believed that a better evaluation would be obtained after her anxiety and sleep apnea were under control, but he did note that her concentration problems seemed anxiety-based.  Tr. 499-500.  Ultimately, he concluded that Ms. Lambert would have trouble working at a consistent level and had an impaired ability to acquire new learning.  Tr. 499-500.

The ALJ discounted Dr. Rosengren's opinions and GAF score on the basis that Dr. Rosengren evaluated Ms. Lambert-Brown soon after she began taking Zoloft for anxiety, and her symptoms improved with that treatment.  Tr. 26.[4]  The ALJ also noted that Dr. Rosengren's opinion regarding Ms. Lambert-Brown's limitation on new learning was not relevant for purposes of evaluating whether she is disabled.  *Id.*

---

[4] Though the Commissioner argues that "the ALJ properly discredited Dr. Rosengren's opinion because it was unsupported by the record or by objective medical findings" (Dkt. 21 at 8), those were not the reasons proffered by the ALJ for discrediting Dr. Rosengren's opinions.  *See* Tr. 26.  The Court will focus on evaluating the validity of the reasons provided by the ALJ, not the reasons that could have been provided by the ALJ.

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 3

Ms. Lambert-Brown contends that subsequent improvement does not negate the validity of Dr. Rosengren's findings at the time he made them. Dkt. 15 at 10. That may be true, but symptoms that improve with treatment are not disabling for purposes of the Social Security Act. *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, the ALJ provided a valid reason to discount Dr. Rosengren's opinions regarding the severity of Ms. Lambert-Brown's limitations. The ALJ also reasonably concluded that Dr. Rosengren's opinion regarding Ms. Lambert-Brown's limitation on new learning does not bear on the disability inquiry. Accordingly, the ALJ did not err in assessing Dr. Rosengren's opinions.

### 2. *Dr. Sands*

Psychiatrist Andy Sands, M.D., treated Ms. Lambert-Brown from March 2007 through October 2007. *See* Tr. 609-15, 619-29, 631-42, 651-54. In September 2007, Dr. Sands opined that Ms. Lambert-Brown was not capable of working even a low-stress job due to her limitations in sustained concentration and persistence, social interactions, and adaptation. Tr. 630-38. The ALJ discounted the weight of opinions contained within Dr. Sands' September 2007 evaluation form and a contemporaneous letter written to Ms. Lambert-Brown's counsel on the grounds that the opinions were inconsistent with Dr. Sands' treatment records and earlier opinions, which documented improvement with medication and "few objective abnormalities." Tr. 26.

The ALJ did not err in finding Dr. Sands' opinions to be inconsistent with earlier records. Specifically, in February/March 2007 evaluations, Dr. Sands indicated that Ms. Lambert-Brown's "cognitive functions appear to be grossly intact without any obvious defects in orientation, memory, recall, intelligence, nor attention or concentration." Tr. 614. Dr. Sands also indicated that he believed Ms. Lambert-Brown would benefit from more aggressive traditional treatment of her depression, even though she "clearly prefers naturopathic treatment

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 4

and is very leery of traditional medical physician treatment." Tr. 615.  Ms. Lambert-Brown eventually did begin a more aggressive course of treatment under Dr. Sands' care, and the increased dosage of Zoloft proved to have beneficial effect.  By July 2007, Ms. Lambert-Brown reported to Dr. Sands that "Zoloft has helped improve her mood, and now she is less jittery, feels more stable, and more balanced." Tr. 622.  In August 2007, Ms. Lambert-Brown reported looking for part-time jobs because even though she was still anxious, she could function due to Zoloft. Tr. 621.  Dr. Sands' progress notes from September 2007, written just a few weeks before he completed the evaluation form and wrote to Ms. Lambert-Brown's counsel, quote Ms. Lambert-Brown as saying "I don't feel as bad as I did" and note that Zoloft has been "overall helpful" to her functioning.  Tr. 620.  These notes are inconsistent with Dr. Sands' opinions regarding Ms. Lambert-Brown's marked and severe limitations, and thus the ALJ's reason for discounting Dr. Sands' opinions is valid.

   *3. Ms. Durham*

   Sarah Durham, LMHC, provided mental health treatment to Ms. Lambert-Brown at Sound Mental Health, and opined in June 2008 that she "is disabled and unable to maintain employment due to mental illness." Tr. 644.  Ms. Durham noted that Ms. Lambert-Brown occasionally reports that she is "doing well," but that "doing well" does not mean that she can maintain employment without decompensating. *Id.*

   The ALJ accorded "zero weight" to Ms. Durham's opinions, in light of her status as an "other source" (rather than an "acceptable medical source"), and in light of their inconsistency with "the other evidence of record." Tr. 26-27.  The ALJ also noted that Ms. Durham's opinions reach the ultimate issue of disability reserved to the Commissioner.  Tr. 27.

   Ms. Lambert-Brown does not explicitly disagree with the ALJ's classification of Ms.

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 5

Durham as an "other source," but simply contends that some factors could support weighing the opinion of an "other source" more heavily than an "acceptable medical source." Dkt. 15 at 17. Ms. Lambert-Brown does not, however, attempt to show that those factors are present in this case.

Moreover, as noted in previous sections, the medical evidence shows that Ms. Lambert-Brown's condition improved with her increased Zoloft dosage, and thus the ALJ did not err when finding Ms. Durham's opinions to be inconsistent with that evidence. Finally, the ALJ correctly noted that whether Ms. Lambert-Brown can work is an issue reserved to the Commissioner; he properly considered the opinion and determined it was not consistent with other evidence in the record. *See* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *3 (Jul. 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").

    *4.*    *Dr. Brown*

Laura Brown, Ph.D., supervised and approved of an August 2010 psychological evaluation of Ms. Lambert-Brown performed by Tyson Bailey, LMHCA. Tr. 756-75. Mr. Bailey diagnosed Ms. Lambert-Brown with PTSD, and opined that "she is likely impaired functionally by those symptoms at levels that prelude engaging in substantial gainful employment." Tr. 765. Mr. Bailey also indicated that Ms. Lambert-Brown has an "apparent tendency to exaggerate some of her problems of cognitive functioning[.]" Tr. 765.

The Bailey/Brown evaluation was not included in the record before the ALJ, but Ms. Lambert-Brown contends that it should be "considered when weighing medical opinions." Dkt. 15 at 19. The Appeals Council considered this evidence and found that it did not provide a basis

for altering the ALJ's decision (Tr. 1-6), and the Court agrees for the following reasons.

First, Dr. Brown's mental status examination revealed no memory deficits, and Ms. Lambert-Brown was oriented, denied hallucinations, and her concrete and abstract thought processes were intact. Tr. 763. Testing also revealed that Ms. Lambert-Brown "attended appropriately and responded consistently across all test measures," though Dr. Brown did indicate that she demonstrated "a tendency to exaggerate her current level of distress by endorsing items that are unlikely and unusual." Tr. 763. Many of Ms. Lambert-Brown's cognitive abilities fell within the average range or above, specifically her ability to understand patterns, manipulate visually presented information, utilize short-term memory stores, manipulate auditory information, maintain attention, quickly scan visual information, use nonverbal reasoning, use simultaneous mental processes, define basic words, and use verbal reasoning skills. Tr. 763. These findings undermine Dr. Brown's opinions that Ms. Lambert-Brown will have difficulty concentrating and focusing on work, and difficulty learning and remembering new information. Tr. 765. Furthermore, Dr. Brown's opinion that Ms. Lambert-Brown will have difficulty in being in the same room with others is undermined by her self-reported weekly attendance at a Bible study group at church. *See* Tr. 282. Because Ms. Lambert-Brown's test results and daily activities show that she is less limited than Dr. Brown concluded, this new information presented to the Appeals Council does not indicate that the ALJ's decision is not supported by substantial evidence. *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (holding that a district court shall consider new evidence submitted to the Appeals Council to determine whether an ALJ's decision is supported by substantial evidence).

/

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 7

*5.     Dr. Dame*

Ms. Lambert-Brown does not devote a separate section of her briefing to discussing the opinions of John Dame, M.D., but contends in one sentence that the ALJ overlooked physical impairments identified by Dr. Dame and should have requested a physical RFC assessment. *See* Dkt. 15 at 23. This skeletal argument is not adequate to merit further consideration by the Court. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues raised without any specificity).

*6.     Drs. Fisher and Gordy*

The ALJ afforded significant weight to the opinions of Alex Fisher, Ph.D., a State agency medical consultant who completed a Mental RFC Assessment ("MRFCA") form. Tr. 567-69. Dr. Fisher opined that Ms. Lambert-Brown would "have no difficulty understanding simple [] and more detailed instructions." Tr. 569. Dr. Fisher indicated that she would "lose extended concentration at time, but can redirect as needed when carrying out detailed instructions." *Id.* Dr. Fisher also opined that Ms. Lambert-Brown could not interact directly with the general public. *Id.*

Likewise, the ALJ gave significant weight to the opinion of medical expert Tracy Gordy, M.D., who testified at the administrative hearing that Ms. Lambert-Brown was capable of working in a structured office setting. Tr. 26 (referencing Tr. 57).

Though Ms. Lambert-Brown contends that the ALJ erred in weighing the opinions of Dr. Fisher and Dr. Gordy more heavily than the opinions of Drs. Sands and Rosengren, as explained above, the ALJ properly discounted the opinions of Drs. Sands and Rosengren because their opinions were not supported by their own treatment records and/or other medical evidence of record. Furthermore, the opinions of Dr. Fisher and Dr. Gordy are supported by substantial

evidence in the record, including evidence dated after Dr. Fisher reviewed the record, namely Ms. Lambert-Brown's improvement with Zoloft as recorded by Drs. Sands and Rosengren (Tr. 495-96, 619-29), in addition to her self-reported daily activities, including preparing complete meals, handling her household chores and appointment schedule, and regular church attendance (Tr. 239-46). Accordingly, the ALJ did not err in assessing the evidence provided by Dr. Fisher and Dr. Gordy.

**B.     The ALJ Did Not Err in Assessing Ms. Lambert-Brown's RFC.**

Ms. Lambert-Brown contends that the ALJ erred in not including all of the impairments listed by Dr. Fisher in the MRFCA form, specifically moderate limitations in some areas of sustained concentration and persistence, social interaction, and adaptation, despite the ALJ's purported crediting of Dr. Fisher's opinions. Tr. 567-68. Though Dr. Fisher did check those boxes, the narrative portion at the end of the form summarizes the conclusions as follows:

> [T]he claimant would have no difficulty understanding simple [] and more detailed instructions. She will lose extended concentration at times, but can redirect as needed when carrying out detailed instructions. Stress tolerance is lowered by mixed [symptoms] but they are of moderate intensity and would not prevent her from carrying out work instructions with consistency.
> The claimant's anxiety symptoms would preclude interaction directly with the general public.
> The claimant would be able to handle workplace stresses in a structured setting.

Tr. 569.

The ALJ properly focused on this narrative portion of the MRFCA when crafting his RFC assessment. *See* Program Operations Manual System ("POMS") DI 25020.010 at B.1 ("The purpose of section I . . . on the [MRFCA] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 9

1 workday and workweek on an ongoing, appropriate, and independent basis.  It is the narrative

2 written by the psychiatrist or psychologist in section III . . . of [the MRFCA] that adjudicators

3 are to use as the assessment of RFC.")  And furthermore, the ALJ accounted for the limitations

4 identified by Dr. Fisher and endorsed by Dr. Gordy in the RFC assessment: the ALJ limited Ms.

5 Lambert-Brown to simple and some detailed tasks and instructions, and precluded her from

6 significant direct contact with the general public.  Tr. 22.  Ms. Lambert-Brown has thus failed to

7 identify error in the ALJ's assessment of the opinions of Dr. Fisher and Dr. Gordy.

8 **C.    The ALJ Did Not Err in Discounting Ms. Lambert-Brown's Credibility.**

9 The ALJ discounted Ms. Lambert-Brown's credibility on the grounds that (1) her

10 testimony conflicted with the medical record, which showed generally normal objective findings

11 or only mild limitation; (2) she did not seek treatment commensurate with her subjective

12 complaints; (3) she failed to report mental impairments until a year and a half after the alleged

13 onset date (previously focusing on physical symptoms); and (4) her self-reported daily activities

14 show a higher level of functioning than she alleged.  Tr. 23-25.  Ms. Lambert-Brown argues that

15 these are not clear and convincing reasons to discount her credibility.

16 It is true that failure to seek treatment, or to acknowledge the need for treatment, for

17 mental illness may not be a valid reason to discount a claimant's credibility.  *See Nguyen v.*

18 *Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Thus, the fact that claimant may be one of

19 millions of people who did not seek treatment for a mental disorder until late in the day is not a

20 substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is

21 inaccurate.").  But the two other reasons provided by the ALJ are clear and convincing.  As

22 discussed *supra*, Section III.A, the medical evidence showed that Ms. Lambert-Brown's

23 condition improved with an increased Zoloft dosage and her mental status examinations often

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 10

revealed little to mild impairment, and Ms. Lambert-Brown engaged in some regular activities (such as church attendance and participation in a Bible study group) that undermined some of her testimony.[5] Accordingly, the ALJ's adverse credibility determination is supported by substantial evidence in the record.  *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming an ALJ's adverse credibility determination that is supported by substantial evidence, even if only some of the reasons provided by the ALJ are valid).

**D.     The ALJ Did Not Err in Rejecting Lay Evidence.**

The ALJ acknowledged the lay statements provided by Ms. Lambert-Brown's brother, Michael Lambert, and her friend, Mekel Williams, and indicated that he discounted their testimony for the same reasons that he discounted Ms. Lambert-Brown's credibility.  Tr. 27 & n.7.  He also noted that the lay evidence failed to account for Ms. Lambert-Brown's improvement with medication.  Tr. 27.  Ms. Lambert-Brown contends that the ALJ erroneously failed to provide germane reasons to reject lay testimony.

To some degree, the lay witnesses described Ms. Lambert-Brown's impairments in a manner consistent with her own testimony.  Tr. 255-63, 286-93.  For example, Mr. Lambert described Ms. Lambert-Brown's daily activities as including caring for her daughter, preparing meals, household chores, attending church, and talking on the phone.  Tr. 255-59.  He indicated that he did not observe many other items listed on the form, such as her ability to concentrate or follow directions, but stated that she handles stress "OK I guess" and changes in routine "well." Tr. 261.  Mr. Lambert's testimony does not expand beyond Ms. Lambert-Brown's testimony, and

---

[5] The Court also notes that the new evidence from Dr. Brown, submitted to the Appeals Council for the first time, indicates that Ms. Lambert-Brown had a tendency to "exaggerate her current level of distress[.]" Tr. 763.  The Commissioner does not characterize this evidence as affirmative evidence of malingering, but the Court nonetheless considered this evidence when evaluating whether the ALJ's adverse credibility determination is supported by substantial evidence.

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 11

in some cases appears to suggest that she is less limited than she testified. Ms. Williams also described many of the same limitations that Ms. Lambert-Brown endorsed, such as difficulty understanding instructions and tolerating noisy environments. Tr. 286-93.

Both Mr. Lambert's and Ms. Williams's statements were written before Ms. Lambert-Brown increased her Zoloft dosage, and therefore, as the ALJ noted, do not account for the improvement that resulted with that medication adjustment, as documented in the medical evidence. Tr. 27. To the extent that the lay evidence is consistent with Ms. Lambert-Brown's testimony (see Tr. 39-51, 278-85), the ALJ's reasons for discounting her credibility apply with equal force to the lay evidence, as the ALJ noted. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("The ALJ gave reasons for rejecting Molina's testimony regarding her symptoms that were equally relevant to the similar testimony of the lay witnesses, and that would support a finding that the lay testimony was similarly not credible.") The ALJ specifically commented on this link, and therefore did not err.

Furthermore, some of the lay evidence (specifically Mr. Lambert's comments about Ms. Lambert-Brown's ability to handle stress and adapt to change) indicates that Ms. Lambert-Brown is less impaired than she testified, and that evidence is consistent with the ALJ's decision. For these reasons, Ms. Lambert-Brown has failed to show that the ALJ erred with respect to lay evidence.

**E.    Any Error at Step Four is Harmless.**

Ms. Lambert-Brown does not dispute that any error at step four could have been corrected by the ALJ's alternative step-five findings, but she reiterates her arguments that the ALJ erred at step five because he failed to account for various limitations in the RFC assessment. *See* Dkt. 24 at 1. But because the Court previously rejected Ms. Lambert-Brown's arguments

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 12

regarding any RFC error, her step-five argument also fails.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 5th day of December, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 13